**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| AFFORDABLE DENTURES -- AUDUBON, MICHELLE AITKEN, DDS, P.A., et al., | |
| Plaintiffs, | Civil No. 17-12136 (RMB/JS) |
| v. | **OPINION** |
| AFFORDABLE CARE, LLC; and AFFORDABLE DENTURES DENTAL LABORATORIES, INC., | |
| Defendants. | |

**APPEARANCES:**

SCARINCI HOLLENBECK, LLC
By:  Joel N. Kreizman, Esq.
331 Newman Springs Road, Suite 310
Red Bank, New Jersey 07701
        Counsel for Plaintiffs

ANDERSON KILL P.C.
By:  Frank G. Murphy, Esq.
     Bruce Strong, Esq.
One Gateway Center, Suite 1510
Newark, New Jersey 07102
        Counsel for Defendants

**BUMB**, UNITED STATES DISTRICT JUDGE:

This suit arises out of disputes primarily between Plaintiff

Michelle Aitken, D.D.S., and Defendant Affordable Care, LLC, which

provides management services for Dr. Aitken's dental offices

located in Audubon and Vineland, New Jersey.  Defendant Affordable

1

Dentures Dental Laboratories, Inc., is a subsidiary of Defendant Affordable Care, and provides on-site dental laboratory services at both of Dr. Aitken's office locations.

Before the Court is Defendants' Motion to Compel Arbitration. For the reasons stated herein, the Motion will be granted in part, denied in part, and denied without prejudice in part.[1]

## I.    FACTS

The following facts are alleged in the Verified Complaint ("V.C."), or found in the documents attached as exhibits to the Verified Complaint.  Michelle Aitken is a dentist with two offices: one in Audubon, New Jersey, and one in Vineland, New Jersey. (V.C. ¶¶ 5)  Dr. Aitken "wholly owns" the professional associations-- Plaintiff "Affordable Dentures-Audubon, Michelle Aitken, DDS, P.A." (hereafter "the Audubon P.A."); and Plaintiff "Affordable Dentures-Vineland, Michelle Aitken, DDS, P.A." (hereafter "the Vineland P.A.")-- which operate out of the offices.  (V.C. ¶¶ 6-7)

### A.  **The Audubon Office**

In 2004, Dr. Aitken formed the Audubon P.A. to acquire a dental practice from another dentist.  (V.C. ¶ 14)  In connection with the acquisition of the practice, "[o]n February 1, 2004, Dr.

---

[1]    The Court exercises diversity of citizenship subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

Aitken signed" three "interlocking agreements" with Defendants[2] each of which, the Verified Complaint alleges, "is coterminous with the others." (V.C. ¶ 16) The three agreements are: (1) "Agreement to Provide Management Services to a Dental Practice"[3]; (2) "Agreement to Provide Dental Laboratory Services"[4]; and (3) a "Facility and Equipment Lease."[5] Many years later, on September 1, 2014, Plaintiffs and Defendants signed (4) the "Equipment Purchase and Sale Agreement,"[6] and (5) "Agreement Regarding Venue."[7] Each agreement is summarized in turn.

(1) <u>Management Services Agreement</u>

The Management Services Agreement is between the Audubon P.A. (designated "PC" in the agreement) and Affordable Care (designated "Manager" in the agreement). The introductory recitals to the agreement state that the Audubon P.A. "has requested Manager

---

[2] A fourth agreement, the "Managing Dentist Employment Agreement" was also signed on February 1, 2004. (V.C. ¶ 16) That agreement, however, is between Dr. Aitken and the Audubon P.A.; neither Defendant is a signatory to that agreement. The Verified Complaint also explains that "Dr. Aitken's Employment Agreement with the Audubon Dental Practice is effectively an Employment Agreement with herself." (V.C. ¶ 19) The Employment Agreement is not implicated by any of the claims in the Verified Complaint, nor is it the basis for Defendants' instant Motion to Compel Arbitration.

[3] Dkt No. 1-2, p. 60 of 107, through 81 of 107.

[4] Dkt No. 1-2, p. 103 of 107, through 107 of 107.

[5] Dkt No. 1-2, p. 90 of 107, through 102 of 107.

[6] Dkt No. 1-3, p. 63 of 101, through 85 of 101.

[7] Dkt No. 1-3, p. 87 of 101, through 88 of 101.

[Affordable Care] to act as its agent in the management of certain business aspects of the [dental] Practice."[8]  The agreement further provides that "Manager shall manage the business aspects of the Practice on [the Audubon P.A.'s] behalf and in the [the Audubon P.A.'s] name . . . Manager is obligated to manage the Practice with [the Audubon P.A.'s] best interest in mind[.]"[9]  The "business aspects" Affordable Care agreed to manage include "office space, furnishing and equipment," "in-center laboratory," "staffing," "inventory and supplies," "legal services," "marketing," "financial services" (including budgeting and payroll); and "insurance" (other than professional liability insurance).[10]  In exchange, the Audubon P.A. agreed to pay Affordable Care monthly management fees as set forth in Exhibit C to the agreement.[11]

Most relevant to the instant suit and motion, the agreement contains this arbitration provision:[12]

---

[8]  Dkt No. 1-2, p. 60 of 107.

[9]  Id. at p. 60-61.

[10]  Id. at p. 74–77.

[11]  Id. at p. 78–81.

[12]  Id. at p. 68-69

(D) **ARBITRATION**. Any controversy or dispute between the Manager and the PC or its shareholder(s) with respect to the application or interpretation of the terms of this Agreement, except failure of the PC to pay compensation to the Manager, will be settled by arbitration in Raleigh, North Carolina in accordance with the then existing rules of the American Arbitration Association applicable to commercial arbitration.

The Management Services Agreement and Exhibit C to the agreement were amended on September 1, 2014, principally to extend the term of the agreement to April 1, 2034 and to alter the management fee schedule.[13]

(2) Laboratory Services Agreement

The Laboratory Services Agreement is between the Audubon P.A. (designated "PC" in the agreement) and Affordable Dentures (designated "ADDL" in the agreement). The agreement provides that the Audubon P.A. will exclusively use Affordable Dentures to perform the lab services enumerated in Exhibit A of the agreement, which mainly include various types of dentures and repairs / "remakes" of such dentures.[14]

Most relevant to the instant suit and motion are the following three provisions of the agreement. First and second, the agreement provides[15] in relevant part:

---

[13]   Dkt. No. 1-3, p. 57 of 101, through 61 of 101.

[14]   Dkt. No. 1-2, p. 103-107.

[15]   Id. at p. 103, 104.

1. <u>WORK TO BE PERFORMED.</u> ADDL will perform for PC the dental laboratory procedures shown on Exhibit "A", which is attached hereto and incorporated herein by this reference. ADDL shall perform such work with skill and quality no less than that commonly provided by other dental laboratories within the state of New Jersey. ADDL may change the

and,

5. <u>PAYMENT AND DELIVERY OF SERVICES.</u> ADDL shall perform all laboratory work assigned to it by PC in a timely manner and meet all reasonable deadlines imposed on such work by PC. PC shall pay ADDL for all work performed upon receipt of invoices.

Third, the agreement contains this arbitration provision[16]:

9. <u>ARBITRATION.</u> Any controversy or dispute between ADDL and the PC with respect to the application or interpretation of the terms of this Agreement, except failure of the PC to pay compensation to ADDL, will be settled by arbitration in Raleigh, North Carolina in accordance with the then existing rules of the American Arbitration Association applicable to commercial arbitration.

(3)  Facility and Equipment Lease

The lease appears to be a rather straightforward commercial lease between Affordable Care as the "Landlord," and the Audubon P.A. as the "Tenant." It provides that the "Tenant may use the Premises for the purpose of operating a dental practice, and for no other purpose."[17] Most relevant to the instant suit and motion, the lease also provides that "neither Landlord nor Tenant may terminate this Lease except in connection with the termination of that certain Agreement to Provide Management Services to a Dental Practice between Landlord and Tenant of even date herewith,

---

[16]  Id. at p. 105.

[17]  Dkt No. 1-2, p. 95 of 107.

Termination of said Agreement will result in automatic termination of this Lease."[18]

The lease does not contain an arbitration clause.

(4)  <u>Equipment Purchase and Sale Agreement</u>

The Audubon P.A. and Affordable Care executed the Equipment Purchase and Sale Agreement on September 1, 2014.  The Audubon P.A. agreed to purchase from Affordable Care various dental equipment and furniture already in the Audubon office.

Most relevant to the instant suit and motion are the following two provisions of the agreement.  First, the agreement contains a "Repurchase Option" that provides that upon "expiration or other termination for any reason of the Agreement to Provide Management Services to a Dental Practice . . . dated as of February 1, 2004," Affordable Care "may at any time thereafter elect (but is not required) to purchase all or any portion of the Equipment" for "book value" plus $1.00.[19]

Second, the agreement contains an arbitration clause,[20] which states in relevant part:

---

[18]  Id. at p. 90.

[19]  Dkt No. 1-3, p. 65 of 101.

[20]  Id. at p. 67.

(i)    Dispute Resolution. Any dispute, claim or controversy between or among the parties with respect to, that arises out of or that relates to this Agreement or the Note or any of the arrangements or agreements contemplated or provided for herein or therein, or the breach hereof, whether arising in contract, tort or by statute and including any dispute, claim or controversy concerning the existence, validity, interpretation, enforceability, performance, breach or termination of this Agreement, the validity or enforceability of this subsection and all claims of arbitrability (each, a "Dispute") shall be resolved exclusively in accordance with this subsection.

(i)    If any such Dispute is not resolved by the parties, then within 30 days after the written demand of either party, the Dispute shall be submitted to nonbinding mediation with a single mediator administered by the American Arbitration Association ("AAA") or its successor in accordance with the AAA commercial mediation rules and procedures in effect at the time the mediation commences and the terms of this subsection, before resorting to arbitration. The mediator shall be selected and appointed in accordance with such AAA rules and the terms of this subsection. The mediation shall be conducted in Raleigh, North Carolina. Each party may be represented by one or more attorneys or other selected representative(s). Each party will bear and pay equally the fees and expenses of AAA and the mediator associated with the mediation, and each party will bear its own attorneys' fees, costs and other expenses in connection with the mediation.

(ii)    If the Dispute is not resolved in the course of such mediation, then upon the written demand of either party, the Dispute shall be submitted to and finally resolved by binding arbitration administered by the AAA or its successor in accordance with the AAA commercial arbitration rules and procedures in effect at the time the arbitration commences and the terms of this subsection. The arbitration shall be conducted before a panel of three arbitrators. The arbitrators shall be selected and appointed in accordance with such AAA rules and procedures. The arbitration shall be conducted in Raleigh, North Carolina. Each party may be represented by one or more attorneys or other selected representative(s). Any Dispute concerning this subsection or whether a Dispute is arbitrable shall be determined by the arbitrator(s). The arbitrator(s) may award any appropriate remedy, including monetary damages, injunctive relief or other equitable relief; *provided*, that the arbitrator may not award punitive damages. The award shall be in writing and shall be final and binding on the parties. The award may include interest, as determined by the arbitrator(s), from the date of any default, breach or other accrual of a Dispute until the arbitral award is paid in full. The arbitration shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Each party will bear and pay equally the fees and expenses of AAA and the arbitrator(s) associated with the arbitration, and each party will bear its own attorneys' fees, costs and other expenses in connection with the arbitration, subject to Section 10(h) above.

(5)   Agreement Regarding Venue

The Audubon P.A., Affordable Care and Affordable Dentures executed the Agreement Regarding Venue on September 1, 2014. The introductory recitals list all of the agreements discussed above, and then the agreement states, in relevant part, "it is hereby agreed by the parties that the location or venue of any

arbitration or litigation between the parties shall be in the State of New Jersey."[21]

## B. **The Vineland Office**

More than seven years after forming the Audubon P.A., in 2011 or 2012, Dr. Aitken formed the Vineland P.A. to purchase another dental practice. (V.C. ¶ 26-28) In connection with the acquisition of the practice, "[o]n September 27, 2012 Dr. Aitken signed three interlocking agreements" with Defendants, each of which, the Verified Complaint alleges, "is coterminous with the others." (V.C. ¶ 28) The agreements are: (1) "Services Contract"[22]; (2) "Facility Lease"[23]; and (3) "Business Associate Agreement."[24] A few years later, on September 1, 2014, Plaintiffs and Defendants signed (4) the "Equipment Purchase and Sale Agreement,"[25] and (5) "Agreement Regarding Venue."[26] Each agreement is summarized in turn.

(1)  <u>Services Contract</u>

The Services Contract is between the Vineland P.A. (designated "PC" in the agreement), Affordable Care (designated

---

[21]  Dkt No. 1-3, p. 87-88 of 101.

[22]  Dkt No. 1-3, p. 3 of 101, through 26 of 101.

[23]  Dkt No. 1-3, p. 28 of 101, through 44 of 101.

[24]  Dkt No. 1-3, p. 45 of 101, through 55 of 101.

[25]  Dkt No. 1-3, p. 95 of 101, through 101 of 101, and Dkt No. 1-4, p. 2 of 62 through 16 of 62.

[26]  Dkt No. 1-4, p. 17 of 62, through 18 of 62.

"ACI" in the agreement), and Michelle Aitken, DDS (designated the "Practice Owner" in the agreement). The agreement is substantially similar to the Audubon Management Services Agreement. It states that "ACI shall provide business and administrative services to the PC to support the management of the business aspects of the Practice on the PC's behalf and in the PC's name."[27] The "business and administrative services" Affordable Care agreed to provide include "office space, furnishing and equipment," "in-center laboratory services," "staffing and human resources assistance," "inventory and supplies," "legal services," "marketing," "financial services" (including budgeting and payroll); "insurance" (other than professional liability insurance), and "information technology" (including hardware and software).[28] In exchange, the Vineland P.A. and Dr. Aitken agreed to pay Affordable Care monthly management fees as set forth in Exhibit C to the agreement.[29]

Like the Audubon Management Services Agreement, the Vineland Services Contract contains an arbitration clause[30]:

---

[27] Dkt No. 1-3, p. 3 of 101.

[28] Id. at p. 3-6.

[29] Id. at p. 22-24.

[30] Id. at p. 15.

(D)   ARBITRATION.  Any controversy or dispute between ACI and the PC or the Practice Owner with respect to the application or interpretation of the terms of this Agreement, except failure of the PC to pay compensation to ACI, will be settled by arbitration in Raleigh, North Carolina in accordance with the then-existing rules of the American Arbitration Association applicable to commercial arbitration.

The Services Contract and Exhibit C to the agreement were amended on September 1, 2014,[31] principally to delete the "Termination Without Cause" provision of the agreement, and to alter the management fee schedule.[32]

(2)  Facility Lease

The lease appears to be a rather straightforward commercial lease between Affordable Care (designated "ACI" in the agreement) and the Vineland P.A. (designated "PC" in the agreement).  It provides that the Vineland P.A. "may use the Premises for the purpose of operating a dental practice, and for no other purpose."[33]  Most relevant to the instant suit and motion, the lease also provides that "neither ACI nor PC may terminate this

---

[31]   Dkt No. 1-3, p. 90 of 101, through 93 of 101.

[32]   Much of the substance of the Audubon Laboratory Services Agreement appears to be incorporated into Exhibit A to the Vineland Services Contract, which is entitled "Onsite Dental Laboratory Services."  Like the Audubon Laboratory Services Agreement, Exhibit A provides that the Vineland P.A. will exclusively use Affordable Dentures to perform the lab services enumerated in the agreement, which mainly include various types of dentures and repairs of such dentures.  Exhibit A also provides that "[a]ll laboratory work shall be performed in a timely manner and meet all reasonable deadlines and quality standards imposed on such work by the PC and the Practice Owner."

[33]   Dkt No. 1-3, p. 32 of 101.

Lease except in connection with the termination of that certain Services Contract of even date herewith; termination of the Services Contract will result in automatic termination of this Lease."[34]

The lease does not contain an arbitration clause.

(3)  Business Associate Agreement

Affordable Care and the Vineland P.A. are parties to the Business Associate Agreement which is "intend[ed] to protect the privacy of protected health information disclosed to [Affordable Care] in compliance with [HIPPA]."[35]

The Business Associate Agreement does not contain an arbitration clause.

(4)  Equipment Purchase and Sale Agreement

The Vineland P.A. and Affordable Care executed the Equipment Purchase and Sale Agreement on September 1, 2014-- the same day the Audubon P.A. executed a document bearing the same title. Except for the purchase prices, and the names of the P.A.s, the two agreements appear to be identical with respect to the two provisions-- the Repurchase Option and arbitration clause-- quoted above.[36]

(5)  Agreement Regarding Venue

---

[34]  Id. at p. 36.

[35]  Dkt No. 1-3, p. 45-55.

[36]  Dkt No. 1-3, p. 97-99.

The Vineland P.A. and Affordable Care executed the Agreement Regarding Venue on September 1, 2014-- the same day the Audubon P.A. executed a document bearing the same title. The introductory recitals list all of the agreements discussed above (except the Business Associate Agreement), and then the agreement states, in relevant part, "it is hereby agreed by the parties that the location or venue of any arbitration or litigation between the parties shall be in the State of New Jersey."[37]

### C. **Claims asserted in the Verified Complaint**

The Verified Complaint contains five counts: (1) violation of N.J.S.A. 45:6-12 and -19 against both Affordable Care and Affordable Dentures; (2) violation of N.J.A.C. 13:30-8.13 and -8.19 against both Affordable Care and Affordable Dentures; (3) "breaches of contracts" and breaches of the covenants of good faith and fair dealing against both Affordable Care and Affordable Dentures; (4) violation of the New Jersey Franchise Practices Act, N.J.S.A. 56:10-1, et seq. against Affordable Care; and (5) breach of fiduciary duty against Affordable Care.

Each Count, however, asserts more than one legal claim. Count 1 alleges that various agreements between the parties violate New Jersey statutory law, which forbids corporations from "practicing dentistry" and forbids a person from practicing dentistry "under any name other than [her] true name." N.J.S.A.

---

[37] Dkt No. 1-4, p. 17-18.

45:6-12.[38] "Practicing dentistry," in turn, is defined as someone who "is a manager" "of a place where dental operations are performed," and "manager" is defined as anyone who "places in the possession of any operator, assistant or other agent such dental material or equipment as may be necessary for the management of a dental office on the basis of a lease or any other agreement for compensation. . ." or "retains the ownership or control of dental material, equipment or office and makes the same available in any manner for the use by operators, assistants or other agents. . ." N.J.S.A. 45:6-19. Specifically, Count 1 asserts the following claims:

- The Audubon Management Services Agreement and the Vineland Services Contract render Affordable Care a "manager" of a dental practice in violation of N.J.S.A. 45:6-12 and -19 (V.C. ¶¶ 75, 78);

- The Audubon Laboratory Services Agreement violates N.J.S.A. 45:6-12 and -19 by vesting "total control" of laboratory services in Affordable Dentures (V.C. ¶ 78 c.- g.); and

- The Purchase and Sale Agreements violate N.J.S.A. 45:6-12 and -19 by: (a) "plac[ing] in possession of Dr. Aitken and her associates equipment which is necessary for the management of a dental office and for compensation paid by the Dental Practices," (V.C. ¶ 76), and (b) including a "repurchase option" whereby Affordable Care may buy back the dental equipment. (V.C. ¶ 77)

Count 2 is similar to Count 1; it asserts violations of the New Jersey regulations governing the "permissible business

---

[38] The penalty for violating the law is "three hundred dollars for the first offense and six hundred dollars for the second and each subsequent offense." N.J.S.A. 45:6-12.

structures" and "practice names" in dentistry. N.J.A.C. 13:30-8.13 and -8.19. It alleges that Affordable Care and Affordable Dentures have taken actions pursuant to the Audubon Management Services Agreement, the Vineland Services Contract and the Audubon Laboratory Services Agreement which violate N.J.A.C. 13:30-8.13 and -8.19. (V.C. ¶¶ 86-88) Specifically, Plaintiffs assert that Defendants have impermissibly exercised control over Dr. Aitken's decision making with regard to the dental services she provides, and have placed advertisements for the Audubon and Vineland P.A.s which allegedly violate the regulations. (V.C. ¶ 86)

Count 3 specifically enumerates breaches of the following Agreements:

- Numerous breaches of the Audubon Management Services Agreement as individually set forth in V.C. ¶¶ 90 a.-c., e., l.-n., p., r., t., u., 91;

- Numerous breaches of the Vineland Services Contract as individually set forth in V.C. ¶¶ 90 d., h.-k., o., q., s., v.;

- Breaches of the Audubon Laboratory Services Agreement as individually set forth in V.C. ¶¶ 90 f., g., 92 a.; and

- Breaches of the covenant of good faith and fair dealing implied by law in the Audubon Management Services Agreement and the Vineland Services Contract as set forth in V.C. ¶¶ 92 b.i.-ii., 93, 94

Count 4 alleges that the Audubon Management Services Agreement and the Vineland Services Contract create a franchisee-franchisor relationship between Dr. Aitken and Affordable Care, which, Plaintiffs assert, is governed by the New Jersey Franchise

15

Practices Act, N.J.S.A. 56:10-1, et seq.[39]  Count 4 asserts that

Affordable Care "has violated section 7 of the Franchise Practices

Act is [sic] at least two ways," by "a. prohibit[ing] Dr. Aitken

from communicating with the owners of other Affordable Care

practices"; and "b. . . . inserting provisions in [the Audubon

Management Services Agreement and the Vineland Services Contract]"

whereby termination of the agreements results in automatic

termination of the Audubon and Vineland Leases respectively.

(V.C. ¶ 108)

Finally, Count 5 asserts that Affordable Care "as business

manager for Dr. Aitken," "has fiduciary duties" that Affordable

Care has breached by, among other things, "comingl[ing] funds [of

Dr. Aitken's practices] with those of other dental practices it

manages," and by increasing the fees it charges the practices.

(V.C. ¶¶ 116-17)

## II.  MOTION TO COMPEL ARBITRATION STANDARD

The parties disagree whether a summary judgment standard or a

motion to dismiss standard should apply to the instant Motion to

Compel Arbitration.  The Court holds that a motion to dismiss

standard applicable to motions pursuant to Fed. R. Civ. P.

---

[39]  The Court observes that there appears to be some conceptual tension between the claims / legal theories asserted in Count 1 and the claims / legal theories asserted in Count 4; under Plaintiffs' theory in Count 1, it would seem that by law, dentistry practices cannot be franchises.  At this early stage of the case, however, the Court need not resolve this tension. Federal Rule of Civil Procedure 8(d) generally allows for pleading "alternative" and "inconsistent" legal theories.

16

12(b)(6) is appropriate under the circumstances of this motion.
The Third Circuit has clearly articulated when the use of each
standard is appropriate:

> when it is apparent, based on the face of a complaint,
> and documents relied upon in the complaint, that certain
> of a party's claims are subject to an enforceable
> arbitration clause, a motion to compel arbitration
> should be considered under a Rule 12(b)(6) standard
> without discovery's delay. But if the complaint and its
> supporting documents are unclear regarding the agreement
> to arbitrate, or if the plaintiff has responded to a
> motion to compel arbitration with additional facts
> sufficient to place the agreement to arbitrate in issue,
> then the parties should be entitled to discovery on the
> question of arbitrability before a court entertains
> further briefing on the question. After limited
> discovery, the court may entertain a renewed motion to
> compel arbitration, this time judging the motion under
> a summary judgment standard.

Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764,
776 (3d Cir. 2013) (internal citations and quotations omitted).
The Court's decision on the instant motion is based soley on the
documents attached to the Verified Complaint and the Verified
Complaint itself, and neither party has asserted that it requires
discovery to garner additional facts to place the agreement to
arbitrate in issue. The parties do not dispute whether they
reached agreements to arbitrate; rather, they dispute whether the
claims asserted in the Verified Complaint fall within the scope of
the various agreements to arbitrate. Thus, a Rule 12(b)(6)
standard is appropriate.

## III. ANALYSIS

Defendants move to compel arbitration asserting that all of the claims in the Verified Complaint are subject to arbitration. The Court first considers the threshold issue of whether arbitrability of particular claims or issues is for the Court or an arbitrator. Second, because the Court concludes that the Court, rather than an arbitrator, must decide arbitrability of all claims and issues-- with one exception explained below-- the Court will proceed to examine whether each claim is subject to arbitration, beginning with the claims asserted in Count 3, the "breaches of contracts" count.[40]

### A.

Absent a delegation clause providing that an arbitrator will decide issues of arbitrability, the Court will decide whether

---

[40] The parties' briefs often blur the lines as to the issue-- or, more appropriately, issues-- before the Court. At the outset of the Court's legal analysis, the Court observes that it is not particularly helpful, nor does it advance the legal analysis, to broadly assert that this entire lawsuit-- or even entire Counts of the Verified Complaint-- should be submitted to arbitration, or, alternatively, that this entire lawsuit (or Counts of the Verified Complaint) should be decided by this Court. This lawsuit was initiated by a five-count Verified Complaint, with all counts asserting more than one individual claim. Moreover, the individual arbitration clauses-- which speak of "disputes," "claims" and "controversies," as opposed to lawsuits or counts-- are embodied in multiple agreements. Thus, a proper analysis of the instant motion to compel arbitration requires a careful matching of legal issues to both: (a) claims of the Verified Complaint, and (b) the applicable, or potentially applicable, arbitration clause. Unfortunately, the parties did not conduct such an analysis. The Court has labored to engage in this careful matching.

particular claims are subject to arbitration in accordance with
the applicable agreement. Morgan v. Sanford Brown Inst., 225 N.J.
289 (2016) (applying New Jersey law); Virginia Carolina Tools,
Inc. v. Int'l Tool Supply, Inc., 984 F.2d 113, 117 (4th Cir. 1993)
(applying North Carolina law); Granite Rock Co. v. Int'l Bhd. of
Teamsters, 561 U.S. 287, 296 (2010) (applying federal law).[41]

The only contracts between the parties containing a
delegation clause are the Audubon Equipment Purchase and Sale
Agreement and the Vineland Equipment Purchase and Sale Agreement.
The clause, which is the same in both documents, states in
relevant part:

> any dispute, claim or controversy between or among the
> parties with respect to, that arises out of or that
> relates to this Agreement or the Note or any of the
> arrangements or agreements contemplated or provided for
> herein or therein, or the breach hereof, whether arising
> in contract, tort or by statute and including any
> dispute, claim or controversy concerning the existence,
> validity, interpretation, enforceability, performance,
> breach or termination of this Agreement, the validity or
> enforceability of this subsection and all claims of
> arbitrability (each, a "Dispute") shall be resolved in
> accordance with this subsection. . . . Any Dispute
> concerning whether a Dispute is arbitrable shall be
> determined by the arbitrator.

(Docket No. 1-3, p. 67 of 101; and Docket No. 1-3, p. 99 of 101)

The issue is whether this delegation clause encompasses not
only disputes with "respect to, . . aris[ing] out of or relat[ing]
to" the agreements in which it appears (i.e., the Equipment

---

[41] As to this issue, there is no conflict between New Jersey,
North Carolina, and federal law, therefore the Court need not
conduct a choice-of-law analysis.

Purchase and Sale Agreements) but also the other agreements at issue in this suit-- namely, the Audubon Management Services Agreement, the Vineland Services Contract, the Audubon Laboratory Services Agreement, and the two leases[42]-- such that the delegation clause is applicable to all questions of arbitrability of all claims asserted in the Verified Complaint. If it does, then the Court's analysis would end, and all questions of arbitrability would be sent to arbitration.

Defendants argue that the clause does apply to disputes implicating the other Agreements, pointing to "the aspect of the clauses requiring arbitration 'with respect to, that arises out of or that relates to this Agreement or the Note *or any of the arrangements or agreements contemplated or provided for herein or therein.*'" (Opposition Brief, p. 16-17; Reply Brief, p. 10; italics in the briefs) According to Defendants, this language "necessarily includes disputes under the other interlocking agreements at issue here." (Reply Brief, p. 10)

The Court disagrees. The italicized words "herein" and "therein" plainly refer to, respectively, "this Agreement" (i.e., the Equipment Purchase and Sale Agreement) and "the Note." Thus, the only "arrangements or agreements" addressed by the clause are those "contemplated or provided for" by the Equipment Purchase and

---

[42] The Verified Complaint does not assert that Defendants' alleged wrongful actions or omissions breached the Business Associate Agreement; nor does the Verified Complaint allege that Business Associate Agreement violates New Jersey statutory law.

Sale Agreement and the Note, not any other interlocking agreements. Thus, this Court, rather than an arbitrator, must decide arbitrability of all claims asserted in the Verified Complaint *except* those with respect to, that arise out of, or that relate to the Purchase and Sale Agreements and their respective Notes.

The question then becomes, are any of the claims of the Verified Complaint a "Dispute" as that term is defined in the Purchase and Sale Agreements? The answer is yes-- a portion of Count 1 is a "claim . . . concerning the . . . validity" of the Purchase and Sale Agreement. As set forth above, Count One asserts, among other things, that the Purchase and Sale Agreements violate N.J.S.A. 45:6-12 and -19 by: (a) "plac[ing] in possession of Dr. Aitken and her associates equipment which is necessary for the management of a dental office and for compensation paid by the Dental Practices," (V.C. ¶ 76), and (b) including a "repurchase option" whereby Affordable Care may buy back the dental equipment. (V.C. ¶ 77) Whether this particular "Dispute" / legal claim is arbitrable must be decided by the arbitrator, in accordance with the provisions of the delegation clause contained in the Purchase and Sale Agreements. The arbitrability of all other legal claims-- including the remainder of Count One which asserts that the Audubon Management Services Agreement, the Vineland Services Contract, and the Audubon Laboratory Services Agreement violate

the identified statutes (see V.C. ¶¶ 78-79)-- shall be decided by
the Court as set forth next.

**B.**

(1)  Breach of Contracts / Good Faith Claims (Count 3)

As set forth above, Count 3 asserts breaches of only the
Audubon Management Services Agreement, the Vineland Services
Contract, and the Audubon Laboratory Services Agreement.
Plaintiffs concede, as they must, that all three agreements
contain their own arbitration clauses.  Plaintiffs assert,
however, that the arbitration clauses "should not be followed"
because the clauses do not comply with New Jersey law insofar as
they do not state that the P.A.s waive their right to litigate in
court, and the clause is ambiguous.  (Opposition Brief, p. 27)

(a)  Claims under the Audubon Management Services Agreement
and the Vineland Services Contract

Both services agreements provide that "[t]he validity,
interpretation and performance of this Agreement shall be governed
by and construed in accordance with the laws of the State of North
Carolina except that issues concerning the practice of dentistry
shall be governed by the laws of New Jersey."  The issue of
whether a contractual arbitration clause is valid and enforceable
does not concern the practice of dentistry; therefore, in
accordance with the plain language of the parties' agreements,
North Carolina law, not New Jersey law, applies.  Moreover,
Plaintiffs do not argue that under North Carolina law a waiver-of-

rights provision is required to make the arbitration clause valid

and enforceable.[43]  Thus, Plaintiffs' first argument fails.

Second, Plaintiffs argue that the arbitration clauses are

ambiguous, and inapplicable to the breach of contract claims

because the clauses "do not use the word 'breach.'" (Opposition

Brief, p. 27 n.10)  The Court rejects this argument.  The breach

of contract claims are disputes "with respect to the application

or interpretation of the terms" of the agreements.  The only way

to determine whether a breach has occurred is by reference to the

terms of the agreements.  Thus, Plaintiffs' second argument fails.

The Court holds that the breach of contract claims based on

the Audubon Management Services Agreement and the Vineland

Services Contract are subject to arbitration.[44]

---

[43]  Indeed, while the Court does not decide the issue, caselaw
suggests that even under New Jersey law, a waiver-of-rights
requirement may only exist for consumer contracts and employment
contracts, not commercial contracts such as those at issue here.
See Gold Mine Jewelry Shoppes, Inc. v. Lise Aagaard Copenhagen,
A/S, 240 F. Supp. 3d 391, 395 (E.D.N.C. 2017) ("New Jersey state
courts have limited the [waiver-of-rights requirement] to
employment and consumer contexts.")(collecting cases); see also
Moon v. Breathless, Inc., 868 F.3d 209, 214 (3d Cir. 2017) (in an
employment case, stating that New Jersey law requires the
arbitration clause to contain clear and unambiguous waiver-of-
rights language).

[44] Some of Plaintiffs' breach of contract claims may require a
decision concerning the requirements of New Jersey law as set
forth in N.J.S.A. 45:6-12 and -19 and N.J.A.C. 13:30-8.13 and -
8.19.  Most notably, the Audubon Management Services Agreement and
the Vineland Services Contract both contain a clause entitled
"Contract Modifications for Prospective Events" which, Plaintiffs
contend, requires Affordable Care to "amend" the agreements "as
necessary" so as to avoid violating New Jersey laws and
regulations.  At least one of Plaintiffs' breach of contract

(b)  <u>The Audubon Laboratory Services Agreement</u>

Unlike the two services agreements between the P.A.s and Affordable Care, the Audubon P.A.'s Laboratory Services Agreement with Affordable Dentures has no choice-of-law provision.[45]  Because this is a diversity case, the Court applies New Jersey choice-of-law rules to determine whether, as Plaintiffs assert, New Jersey law applies or, as Defendants assert, North Carolina law applies.  See <u>Gay v. Creditinform</u>, 511 F.3d 369, 389 (3d Cir. 2007) (stating that a federal district court sitting in diversity applies the forum state's choice-of-law rules pursuant to <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487 (1941)).

New Jersey follows the Restatement (Second) of Conflict of Laws, section 188, generally known as the most significant relationship test.  <u>State Farm Mut. Auto. Ins. Co. v. Estate of</u>

_____

claims asserts that Affordable Care has breached this clause by failing to agree to amend the agreements.  (V.C. ¶ 90 a.-c.)  In adjudicating this claim, the arbitrator may need to decide the issue of whether the agreements violate the relevant laws and regulations, which is a necessary predicate to triggering the parties' obligation to amend.  Stated another way, it is possible that the issue of whether New Jersey law has been violated may be adjudicated by the arbitrator as Affordable Care's defense to Plaintiffs' breach of contract claims, as distinguished from the arbitrator deciding whether Plaintiffs may bring a claim directly under the same laws and regulations as asserted in Counts 1 and 2 of the Verified Complaint.

[45]  Nor can the Laboratory Services Agreement be interpreted as incorporating the Audubon Management Services Agreement's choice-of-law provision.  The Laboratory Services Agreement makes no reference to the Management Services Agreement and contains an integration clause which states, "[t]his Agreement contains the entire agreement between the parties in regard to the subject matter hereof."

Simmons, 84 N.J. 28, 34 (1980); see also Pfizer, Inc. v. Employers Ins. of Wausau, 154 N.J. 187, 194 (1998) ("Restatement section 188 sets forth the general rule governing choice of law in contract actions[.]").  Section 188 lists several contacts to be considered in the most significant relationship analysis, such as the domicile, residence, nationality, place of incorporation and place of business of the parties, and the places of contracting and performance.

Unfortunately, the parties have not briefed this issue, and the Court declines to rule on the choice-of-law in the absence of such briefing.  Accordingly, the Court cannot decide the validity of the arbitration clause contained in the Audubon Laboratory Services Agreement; therefore the Motion to Compel Arbitration as to all claims asserting breach of the Audubon Laboratory Services Agreement will be denied without prejudice.  If, after considering the Court's disposition with regard to Plaintiffs' other claims, the parties wish to submit supplemental briefing on this issue, the Court will grant leave to do so.

(2)  Breach of Fiduciary Duty (Count 5)

Plaintiffs assert that the breach of fiduciary duty count is "not encompass[ed]" by the arbitration clauses in either the Audubon Management Services Agreement or the Vineland Services Contract (Opposition Brief, p. 18-19), and therefore, is not subject to arbitration.  This argument is directly undermined by the record.

The Verified Complaint pleads that the parties' relationship is the product of, and defined by, the Audubon Management Services Agreement and the Vineland Services Contract. Specifically, the breach of fiduciary duty count repeatedly alleges that Affordable Care, "as the business manager," "has fiduciary duties" to Plaintiffs (V.C. ¶¶ 113, 114, 117), and both services agreements provide that Affordable Care will manage the business aspects of the P.A.s on their behalf and in their names.[46] Thus, the claims asserted in the fiduciary duty count are "controvers[ies] or dispute[s] between [Affordable Care] and the [P.A.s] . . . with respect to the application or interpretation of the terms of" the services agreements because the services agreements create and define the fiduciary relationship between the parties. In this way, the breach of fiduciary duty count is, in essence, asserting additional breach of contract claims, which claims the Court has held are subject to arbitration. An adjudication of the breach of fiduciary duty claim will necessarily require an examination of what Defendants were obligated to do and/or what they were permitted to do under the agreements,[47] which, of course, will

---

[46] In contrast, the Verified Complaint does not allege that Affordable Care has fiduciary duties to Plaintiffs by virtue of being the P.A.'s landlord under the leases, nor does it allege that Affordable Care has fiduciary duties to Plaintiffs by virtue of being the seller under the Equipment Purchase and Sale Agreements.

[47] For example, Plaintiffs assert that Defendants have violated their fiduciary duties by comingling funds, yet the Verified Complaint also acknowledges that the Audubon Management

require either an "application or interpretation" of the terms of the services agreements.[48]

Accordingly, the Court holds that the breach of fiduciary duty claims asserted in Count 5 are subject to arbitration.

### (3)  Violation of N.J.S.A. 45:6-12 and -19 (Count 1)

As discussed above, a portion of Count One asserts that the Audubon Management Services Agreement, the Vineland Services Contract, and the Audubon Laboratory Services Agreement violate the identified New Jersey statutes (see V.C. ¶¶ 78-79).  Relying on the language of the services agreements' arbitration clauses, which only apply to controversies or disputes "with respect to the application or interpretation of the terms of this Agreement," not the legal validity of the terms under New Jersey statutory law, Plaintiffs contend that their claims fall outside of the arbitration clause.  Defendants argue that the broader, "more detailed" arbitration clause contained in the Equipment Purchase and Sale Agreements (Reply Brief, p. 10) encompasses these claims.  However, as discussed above, the arbitration clause in the Equipment Purchase and Sale Agreements, by its terms, is not

_____

Services Agreement and the Vineland Services Contract "gave [Affordable Care] a contractual right to comingle."  (V.C. ¶ 115)

[48]  The Court does not rule-out the possibility that reference to the common law governing agents' fiduciary duties to their principals may provide useful background, and may inform the arbitrator's application and interpretation of the services agreements.  This possibility, however, does not remove the fiduciary duty count from the reach of the arbitration clauses.

incorporated into the other agreements between the parties. Nor
do the relevant provisions of the Equipment Purchase and Sale
Agreements evidence any intent to amend or replace the arbitration
provisions in the other agreements between the parties. Accepting
Defendants' argument would effectively result in supplanting the
arbitration clauses contained in the Audubon Management Services
Agreement, the Vineland Services Contract, and the Audubon
Laboratory Services Agreement with the clause contained in the
Purchase and Sale Agreements with no record support for doing so.
Thus, the Court rejects Defendants' argument, and looks to the
arbitration clauses contained in the Audubon Management Services
Agreement, the Audubon Laboratory Services Agreement,[49] and the
Vineland Services Contract.

It does not appear that determining whether the Audubon
Management Services Agreement, the Audubon Laboratory Services
Agreement, and the Vineland Services Contract violate New Jersey
law will require an "application or interpretation" of the
agreements' terms. Rather, it appears that the resolution of the
claims asserted in Count 1 may require a comparison of the
agreements' terms on their face with the requirements of New

---

[49] As stated above, the Court does not rule on the validity
of the Audubon Laboratory Services Agreement's arbitration clause.
The issue is only potentially dispositive as to the arbitrability
of the breach of the Laboratory Services Agreement claims asserted
in Count 3. As explained herein, the other claims premised on the
Audubon Laboratory Services Agreement are not subject to
arbitration for independent reasons.

Jersey law, as determined by the Court.[50]  Thus, the Court holds

that the claims of Count One attacking the legal validity of the

Audubon Management Services Agreement, the Vineland Services

Contract, and the Audubon Laboratory Services Agreement under New

Jersey statutory law are not subject to arbitration.

(4)  Violation of N.J.A.C. 13:30-8.13 and -8.19 (Count 2)

The parties make the same arguments as to the asserted

regulatory violations as they do for the asserted statutory

violations just discussed.  The same analysis applies, and the

Court's conclusion is the same.  It does not appear that

determining whether Defendants' actions taken pursuant to the

Audubon Management Services Agreement, the Vineland Services

Contract, and the Audubon Laboratory Services Agreement violated

New Jersey regulations will require an "application or

---

[50]  The Court also notes that Defendants contend that the New
Jersey statutes and regulations cited in the Verified Complaint
either do not create a private right of action in favor of
Plaintiffs, or do not allow for the relief Plaintiffs seek.
(Moving Brief, p. 14)  Given the current procedural posture, the
Court cannot reach the merits of these arguments.  See Edmondson
v. Lilliston Ford, Inc., 593 F. App'x 108, 111 (3d Cir. 2014)
(holding that the "District Court erred in dismissing Edmondson's
motion to compel arbitration and stay proceedings as premature
pending a determination of Lilliston's motion to dismiss" when
"[t]here is at least a reasonable possibility that some of the
issues presented are arbitrable.").  The Court cannot ignore,
however, the likelihood that an adjudication of the claims
asserted in Counts 1 and 2 will exclusively turn on whether a
private right of action exists under New Jersey law, or the
availability of the remedies Plaintiffs seek under New Jersey law,
independent from what the agreements' terms provide.

interpretation" of the agreements' terms.  Thus, the Court holds
that the claims in Count 2 are not subject to arbitration.

(5)  Violation of New Jersey Franchise Practices Act (Count 4)

Lastly, the analysis for the New Jersey Franchise Practices
Act claims is the same as the analysis of the claims asserted in
Counts 1 and 2.  Once again, Plaintiffs' claims are based on
actions taken pursuant to the Audubon Management Services
Agreement and the Vineland Services Contract (see V.C. ¶ 108 a.)
and an assertion that the terms of the agreements, on their face,
violate New Jersey statutory law (see V.C. ¶ 108 b.).
Adjudicating such claims will not require an "application or
interpretation" of the agreements' terms, therefore the claims are
not subject to arbitration.

## IV.  CONCLUSION

For the foregoing reasons, the Motion to Compel Arbitration
will be granted in part, denied in part, and denied without
prejudice in part.  The Motion will be granted as follows.  The
issues and claims subject to arbitration are: (a) whether
Plaintiffs' claim that the Equipment Purchase and Sale Agreements
violate N.J.S.A. 45:6-12 and -19 is arbitrable; (b) all breach of
contract claims asserted in Count 3, except claims for breaches of
the Audubon Laboratory Services Agreement; and (c) all breach of
fiduciary duty claims asserted in Count 5.

The Motion will be denied as follows.  All other issues and
claims are subject to adjudication by this Court, except claims

for breaches of the Audubon Laboratory Services Agreement.  As discussed above, the Motion to Compel Arbitration will be denied without prejudice as to the arbitrability of claims for breaches of the Audubon Laboratory Services Agreement.[51]  An appropriate Order accompanies this Opinion.


                                          s/ Renée Marie Bumb

Dated: <u>May 9, 2018</u>
                                          _____
                                          RENÉE MARIE BUMB
                                          UNITED STATES DISTRICT JUDGE

---

[51]  In light of the Court's ruling, and in the interests of efficiency, preservation of resources, and consolidation of issues, the parties may wish to submit this entire suit to arbitration, as opposed to simultaneously pursuing parallel proceedings in two different fora.  If the parties do not elect to submit this entire suit to arbitration, the Court may decide to send the non-arbitrable claims to Court-annexed mediation pursuant to L. Civ. R. 301.1.